[Cite as *State ex rel. Parente v. Indus. Comm.*, 2026-Ohio-2692.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Joseph Parente, | : | |
| Relator, | : | No. 24AP-652 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on July 14, 2026

**On brief:** *Shapiro, Marnecheck & Palnik*, *Matthew Palnik*, and *Colter McArdle*, for relator.

**On brief:** [*Andy Wilson*], Attorney General, and *Daniel G. Schumick*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

EDELSTEIN, J.

{¶ 1} Relator, Joseph Parente, initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying Mr. Parente's motion requesting his average weekly wage ("AWW") be set at $2,582.73 and to enter an order setting his AWW at that amount.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined Mr. Parente

did not have a clear legal right to have his AWW set at $2,582.73 and the commission did not have a clear legal duty to set Mr. Parente's AWW at that amount. Thus, the magistrate recommends we deny Mr. Parente's petition for a writ of mandamus.

{¶ 3} Mr. Parente filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

## I. Background

{¶ 4} As set forth more fully in the magistrate's decision, Mr. Parente is the owner and sole employee of Parente Homes, Inc. ("employer"), an "S" corporation, or "pass-through" entity. As the owner and employee of the employer, Mr. Parente pays himself a yearly salary, reported on a W-2[1], and he receives a share of the corporation's income, losses, deductions, and credits, reported on a Schedule K-1[2].

{¶ 5} Mr. Parente sustained a workplace injury on June 3, 2021, and the Ohio Bureau of Workers' Compensation ("BWC") allowed his claim. The BWC initially calculated Mr. Parente's AWW as $765.53, based solely on his W-2 earnings.

{¶ 6} On January 4, 2022, Mr. Parente filed a motion seeking to have his AWW set at $2,582.73. Mr. Parente argued both his W-2 income and his Schedule K-1 earnings should be considered to determine his AWW. In a February 19, 2022 order, a district hearing officer ("DHO") granted Mr. Parente's motion and adjusted his AWW to $1,969.68 based on both his W-2 and Schedule K-1 earnings. The BWC appealed the DHO's decision and, on March 30, 2022, a staff hearing officer ("SHO") issued an order denying relator's motion to adjust his AWW to include his Schedule K-1 earnings. The SHO relied on a BWC policy that directs the BWC to exclude certain types of earnings in the calculation of wages.

---

[1] The Internal Revenue Service directs that an "employer engaged in a trade or business who pays remuneration . . . for services performed by an employee" files a Form W-2 for each employee for whom "[i]ncome, Social Security, or Medicare tax was withheld," or "[i]ncome tax would have been withheld if the employee had claimed no more than one withholding allowance or had not claimed exemption from withholding." Internal Revenue Service, *About Form W-2, Wage and Tax Statement*, https://www.irs.gov/forms-pubs/about-form-w-2 (accessed July 13, 2026).

[2] The Internal Revenue Service further directs that an S corporation must "file[] a copy of [the Schedule K-1 (Form 1120-S)] with the IRS to report [an individual's] share of the corporation's income, deductions, credits, etc." Internal Revenue Service, *About Form 1120-S, U.S. Income Tax Return for an S Corporation*, https://www.irs.gov/forms-pubs/about-form-1120-s (accessed July 13, 2026).

Therefore, the SHO excluded Mr. Parente's K-1 earnings and set Mr. Parente's AWW at $1,132.40 based on his W-2 salary. Mr. Parente appealed the SHO's March 30, 2022 order, and the commission refused Mr. Parente's appeal. Mr. Parente then filed the instant complaint for a writ of mandamus.

{¶ 7} As referenced above, the magistrate determined Mr. Parente failed to show a clear legal right to have his Schedule K-1 earnings included in the calculation of his AWW or that the commission has a clear legal duty to calculate his AWW to include his Schedule K-1 earnings. (Appended Mag.'s Decision at ¶ 38.) The magistrate noted the commission, in calculating Mr. Parente's AWW, relied on BWC Administrator Policy #CP-23-01(IV)(C) directing that income reported on a Schedule E form is excluded from the wage calculation. Because the employer issues a Schedule K-1 to report Mr. Parente's share of income or losses and Mr. Parente then uses his Schedule K-1 to report his income or losses on the Schedule E, the magistrate concluded this situation fell within the BWC policy excluding income from S corporations reported on a Schedule E in the calculation of wages. (Appended Mag.'s Decision at ¶ 38.) The commission expressly stated it relied on the BWC policy when it decided not to include Mr. Parente's Schedule K-1 earnings in the calculation of his AWW. Thus, the magistrate found the commission did not abuse its discretion in relying on the BWC policy and determining Mr. Parente's AWW in accordance with the policy. (Appended Mag.'s Decision at ¶ 41.) Although Mr. Parente argued the BWC policy was not binding, the magistrate found Mr. Parente did not demonstrate the commission had a clear legal duty to include the Schedule K-1 income as wages for purposes of calculating his AWW. (Appended Mag.'s Decision at ¶ 39-41.)

{¶ 8} Mr. Parente filed an objection to the magistrate's decision. Mr. Parente does not challenge the magistrate's recitation of the pertinent facts; however, Mr. Parente objects to the magistrate's conclusion that he did not have a clear legal right to have his Schedule K-1 earnings considered in the calculation of his AWW or that the commission did not have a clear legal duty to include the Schedule K-1 earnings in the AWW.

## II. Law and Analysis

{¶ 9} To be entitled to a writ of mandamus, Mr. Parente must demonstrate a clear legal right to the relief sought, that the commission has a clear legal duty to provide such

relief, and that there is no adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 162-63 (1967). Mandamus may lie if the commission abused its discretion by entering an order unsupported by evidence in the record or if there is a legal basis to compel the commission to perform its duties in accordance with law. *State ex rel. Cassens Corp. v. Indus. Comm.*, 2024-Ohio-526, ¶ 10. If some evidence exists in the record to support the commission's findings, this court may not "second-guess the commission's evaluation of the evidence." *State ex rel. Black v. Indus. Comm.*, 2013-Ohio-4550, ¶ 22. With respect to legal questions, a writ of mandamus may issue against the commission " 'if the commission has incorrectly interpreted Ohio law.' " *Cassens* at ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

{¶ 10} In his sole objection to the magistrate's decision, Mr. Parente argues the magistrate erred in finding he does not have a clear legal right to have his Schedule K-1 earnings considered in the calculation of his AWW. R.C. 4123.61 governs the calculation of AWW and provides, in pertinent part:

> [T]he claimant's . . . average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
>
> In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants.

{¶ 11} "The standard formula for calculating the AWW 'is to divide claimant's earnings for the year preceding the injury by fifty-two weeks.' " *State ex rel. Huntington Bancshares, Inc. v. Berry*, 2022-Ohio-531, ¶ 10 (10th Dist.), quoting *State ex rel. Clark v. Indus. Comm.*, 69 Ohio St.3d 563, 565 (1994). However, R.C. 4123.61 provides two exceptions to the standard calculation: (1) a period of unemployment that is "beyond the

[claimant's] control"; and (2) the "special circumstances" provision.  *Id.* at ¶ 10, citing R.C. 4123.61 and *State ex rel. Mattscheck v. Indus. Comm.*, 2013-Ohio-285, ¶ 4 (10th Dist.).

{¶ 12}  The issue here is whether Mr. Parente's Schedule K-1 compensation should be considered "wages" for purposes of calculating his AWW.  R.C. 4123.61 does not define "wage."  However, the BWC has an internal policy related to wage calculation.  BWC Administrator Policy #CP-23-01(IV)(C) provides:

> C. Earnings Included and Excluded in Wage Calculation
>
> 1. The types of earnings included in BWC's calculation of wages include, but are not limited to:
>
> a.  Gross regular earnings, before deductions such as deferred compensation, Cafe 125, etc.;
> . . .
>
> c. Self-employment earnings (e.g., Form 1040 Schedule C);
>
> . . .
>
> e. Bonuses related to direct and active participation in employment during the earnings period (e.g., performance bonus);
>
> f. Profit sharing related to work activity (e.g., earned based on hours worked, product produced, or other earnings related to work activity);
>
> . . .
>
> l. Earnings reported on the [injured worker's] federal income tax return that are specifically subject to either Social Security withholding, Medicare withholding, or self-employment tax (e.g., housing allowance);
>
> m. Income specifically subject to self-employment tax (Schedule SE);
>
> . . .
>
> 2. The types of earnings excluded in BWC's calculation of wages include, but are not limited to:

a. Bonuses unrelated to work activity (e.g., shareholder bonus, contract ratification, company-wide holiday bonus);

b. Profit sharing unrelated to work activity (e.g., owns stock, dividends);

. . .

m. Other forms of income reported on an [injured worker's] tax return that are not subject to Social Security withholding, Medicare, or self-employment tax, including, but not limited to:

. . .

ix. Income reported on Schedule E (including, but not limited to, rental real estate, royalties, partnerships, S corporations, trusts)[.]

The commission stated it relied on subsection (C)(2)(m)(ix) of this policy in excluding Mr. Parente's Schedule K-1 earnings from the determination of his AWW.

{¶ 13} As the magistrate notes, the commission is not bound by the BWC's internal policies and guidelines. *State ex rel. Honda of Am. Mfg., Inc. v. Indus. Comm.*, 2013-Ohio-286, ¶ 4 (10th Dist.), citing *State ex rel. Sugardale Foods, Inc. v. Indus. Comm.*, 90 Ohio St.3d 383, 387 (2000). However, the magistrate concluded that although the commission is not bound by BWC internal policies, the commission did not abuse its discretion in relying on the BWC policy because the commission was permitted to use it as a guideline in calculating Mr. Parente's AWW. Since Mr. Parente uses his Schedule K-1 to report his income or losses on Schedule E, and BWC Administrator Policy #CP-23-01(IV)(C)(2)(m)(ix) specifically excludes income reported on Schedule E from S corporations, the magistrate determined the commission did not abuse its discretion in finding the policy applicable and adhering to its guidelines.

{¶ 14} Though R.C. 4123.61 does not define "wages," the Supreme Court of Ohio has. In *State ex rel. McDulin v. Indus. Comm.*, 89 Ohio St.3d 390 (2000), the court stated "wages," as used in the determination of the AWW, "constitute 'monetary remuneration by an employer * * * for labor or services.' " *Id.* at 392, quoting Webster's Third New International Dictionary 714, at 2568 (1986). *See also Lipsky v. Barry*, 1990 Ohio App.

LEXIS 5538, * 9-10 (10th Dist. Dec. 11, 1990) ("Although not further defined in R.C. Chapter 4123, the term 'wages' generally means compensation paid in return for labor or work."). Mr. Parente argues given the nature of his business and his status as a self-employed individual, any revenue generated by the employer after expenses are a direct result of Mr. Parente's labor. Though he reports the employer's revenue on a Schedule K-1, he maintains this amount nonetheless reflects monetary remuneration to him for labor rendered to the employer. *See McDulin* at 392; *State ex rel. Richards v. Indus. Comm.*, 110 Ohio App.3d 109, 111-12 (10th Dist. 1996), citing *State ex rel. Wireman v. Indus. Comm.*, 49 Ohio St.3d 286, 288 (1990) (explaining that, for a self-employed individual, the "wage" from the business is the net cost of the operation, and "the administrator must carefully examine average weekly wage questions on a case-by-case basis"). Thus, Mr. Parente argues that despite the existence of BWC Administrator Policy #CP-23-01(IV)(C)(2)(m)(ix), the unique circumstances of his compensation render the earnings he reports on his Schedule K-1 "wages" for purposes of his AWW.

{¶ 15} The magistrate determined Mr. Parente could not point to any legal authority *requiring* the commission to consider his Schedule K-1 income in the calculation of his AWW, and the commission, therefore, did not abuse its discretion in following the BWC policy. We find, however, the magistrate improperly narrowed the inquiry underlying Mr. Parente's request for a writ of mandamus. "The AWW is designed to find a fair basis for an award for the loss of future compensation." *State ex rel. Yester v. Indus. Comm.*, 2007-Ohio-2525, ¶ 18 (10th Dist.). The Supreme Court has directed that the AWW " 'should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury.' " *State ex rel. FedEx Ground Package Sys. v. Indus. Comm.*, 2010-Ohio-2451, ¶ 7, quoting *State ex rel. Erkard v. Indus. Comm.*, 55 Ohio App.3d 186, 188 (10th Dist. 1988). "The AWW must do the claimant 'substantial justice' without providing a windfall." *Id.*, quoting *State ex rel. Logan v. Indus. Comm.*, 72 Ohio St.3d 599, 600 (1995). *See also Yester* at ¶ 18 ("the AWW must do substantial justice to the claimant"). Additionally, the Supreme Court directs that the commission "need[s] to carefully examine AWW questions on a case-by-case basis." *Wireman* at 288. Thus, the commission was required to calculate Mr. Parente's AWW with considerations unique to his claim, in a manner that does him substantial justice, and to approximate the average

amount he would have received had he continued working. In relying on the BWC policy excluding Schedule E income, the commission simply stated the BWC policy "is on point in regards to distribution income" and excluded the Schedule K-1 earnings solely on that basis. (Mar. 30, 2022 SHO Order at 2.) The commission did not consider the unique aspects of Mr. Parente's compensation structure as both the owner of the employer and an employee of the employer. Without considering the individualized circumstances unique to Mr. Parente's employment and compensation situation, the commission neglected its clear legal duty to calculate Mr. Parente's AWW in a manner that does him substantial justice.

{¶ 16} We do not mean to suggest Schedule K-1 earnings must always be considered wages under every circumstance. We recognize that while nothing in R.C. 4123.61 specifically directs the commission to exclude Schedule K-1 earnings from the AWW calculation, there is also nothing in that provision specifically requiring its inclusion in the AWW calculation. *See McDulin* at 392. We are also mindful that R.C. 4123.61 "refers to average weekly *wage*, not average weekly *income*," and that "[i]ncome is a much broader term than 'earnings' or 'wages.' " *Id.* (Emphasis in original.) Still, R.C. 4123.61 requires the commission to determine a claimant's AWW in a manner that does "substantial justice" to the claimant. The statute thus contemplates an individualized assessment of a claimant's wages in order to adequately set the claimant's AWW. Though there may be situations in which Schedule K-1 earnings are not appropriate for inclusion in wages, and thus adherence to the BWC policy is warranted, the commission must still assess each case individually to determine whether the claimant's AWW approximates the amount the claimant would have received had he or she continued working and in a manner that does substantial justice.

{¶ 17} Here, the commission found the categorization of a portion of Mr. Parente's compensation as Schedule K-1 earnings was necessarily determinative of whether those earnings could constitute Mr. Parente's wages. The commission did not consider the unique circumstances of Mr. Parente's specific earnings to determine whether the compensation reported on his Schedule K-1 could nonetheless constitute monetary remuneration for labor and services rendered in his individual circumstances such that the Schedule K-1 also included a portion of Mr. Parente's wages. *McDulin* at 392. In other words, the commission treated the BWC policy as determinative rather than as one guideline to be considered among all the circumstances present in Mr. Parente's case.

Therefore, we find it necessary to issue a writ of mandamus remanding the matter back to the commission to determine whether factors unique to Mr. Parente's employment justify a departure from the BWC policy in this specific case so the calculation of Mr. Parente's AWW accurately reflects his monetary remuneration for labor and services rendered to his employer. *See Lipsky*, 1990 Ohio App. LEXIS 5538, at *10-11 (finding income a self-employed individual received from the partnership and the corporation could represent earnings from labor, a return on investment, or a mixture of the two, and remanding the matter back to the commission to address this factual question).[3] We sustain Mr. Parente's sole objection to the magistrate's decision.

## III. Disposition

{¶ 18} Following our independent review of the record under Civ.R. 53, we find the magistrate erred in concluding the commission did not abuse its discretion in calculating Mr. Parente's AWW. Accordingly, we adopt the magistrate's findings of fact but reject the conclusions of law related to the calculation of the AWW pursuant to R.C. 4123.61. We therefore sustain Mr. Parente's sole objection to the magistrate's decision. For the reasons set forth herein, we grant Mr. Parente a writ of mandamus vacating the commission's March 30, 2022 order setting Mr. Parente's AWW at $1,132.40, and we remand this matter to the commission for further proceedings in accordance with this decision.

*Objection sustained*; *writ of mandamus granted*; *cause remanded*.

LELAND and DINGUS, JJ., concur.

-----

[3] We note the magistrate cited *Lipsky* but found it inapplicable because the commission in *Lipsky* did not address the earnings from the S corporation, while here the commission addressed the Schedule K-1 earnings and chose not to include them. We agree with Mr. Parente, however, that the magistrate incorrectly interpreted the commission's order. Although the commission here acknowledged the existence of the BWC policy and refused to include the Schedule K-1 earnings on that basis, there is no indication the commission considered whether the earnings reported on the Schedule K-1 could nonetheless constitute monetary remuneration for labor and services rendered. Because the commission did not consider the factual question of whether Mr. Parente's specific Schedule K-1 earnings should be considered wages in the specific facts of his case, we find *Lipsky* supports the conclusion that we must remand the matter to the commission to make that determination.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Joseph Parente,                    :

        Relator,                                  :

v.                                                                    No. 24AP-652

                               :

Industrial Commission of Ohio et al,        :         (REGULAR CALENDAR)

                               :

        Respondents.                            :

                               :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on March 19, 2026

*Shapiro, Marnecheck & Palnik, Matthew W. Palnik*, and *Colter McArdle,* for relator.

*Dave Yost,* Attorney General, and *John R. Smart,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 19} Relator, Joseph Parente ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied his motion requesting that his average weekly wage ("AWW") be set at $2,582.73.

Findings of Fact:

{¶ 20} 1. Claimant sustained a work-related injury on June 3, 2021, through his employment with respondent Parente Homes, Inc. ("employer"), and his workers' compensation claim was allowed by the Ohio Bureau of Workers' Compensation ("BWC").

{¶ 21} 2. The employer is an "S" corporation, or "pass-through" entity, and claimant is the sole employee of the employer. As an S corporation, the employer issues a Schedule K-1 tax form that reports claimant's share of the employer's current-year income, losses, deductions, and credits. Claimant uses the figures from the Schedule K-1 in preparing a Schedule E tax form to report income or loss from the S corporation. Claimant also receives a base salary as employee of the employer, and these are reported as W-2 wages.

{¶ 22} 3. Claimant submitted financial information to the BWC for the calculation of his full weekly wage ("FWW") and AWW.

{¶ 23} 4. On October 13, 2021, the BWC issued an order setting claimant's FWW at $1,730.77 and his AWW at $765.53.

{¶ 24} 5. In a January 4, 2022, motion, claimant requested his AWW be set at $2,582.73, which included his Schedule K-1 income in his wages total. Claimant submitted further evidence of his wages and income.

{¶ 25} 6. On January 10, 2022, the BWC issued an order in which it denied claimant's motion, finding that claimant's argument that his AWW should be set at $2,582.73 is not supported by the evidence on file. Claimant appealed.

{¶ 26} 7. On February 15, 2022, a district hearing officer ("DHO") held a hearing on claimant's motion. On February 19, 2022, the DHO issued an order, finding the following: (1) the BWC's order is vacated; (2) the AWW is set at $1,969.68; (3) during the

year prior to the date of injury, claimant earned total wages of $102,423.25 as the sole employee of the employer; (4) claimant explained at hearing that his earnings came in the form of his salary and "distributions"; (5) according to claimant's paystub for the pay period ending December 18, 2020, claimant had earned $28,538.46, year to date in salary; (6) a prior paystub corresponding to the pay period ending June 5, 2020, indicates that claimant's year-to-date salary at that time was $12,923.12; (7) therefore, during the one-year period prior to the date of injury, claimant earned $15,615.34 in salary during 2020; (8) claimant earned $43,269.24 in salary from the beginning of 2021 through the pay period ending June 4, 2021; (9) therefore, claimant's salary earnings for the year prior to the date of injury were $58,884.58; (10) in addition, claimant had received year-to-date distribution income of $61,518.54 from the S corporation, according to the paystub for the period ending December 18, 2020; (11) the prior paystub for the pay period ending June 5, 2020, indicates that the distribution income at that point was $27,857.37; (12) thus, for the year 2020 portion of the 52 weeks prior to the date of injury, claimant received distribution payments of $33,661.17; (13) a May 21, 2021, paystub indicates that claimant had received $9,877.50 in distribution payments as of that time; (14) thus, claimant received $43,538.67 in distribution income during the year prior to the date of injury; and (15) accordingly, for the year prior to the date of injury, claimant had earnings of $102,423.25; and (16) $102,423.25 divided by 52 weeks equals an AWW of $1,969.68. Claimant appealed.

{¶ 27} 8. On March 28, 2022, a staff hearing officer ("SHO") held a hearing on claimant's appeal. On March 30, 2022, the SHO issued an order, finding the following: (1) the DHO's order is vacated; (2) claimant's AWW is set at $1,132.40; (3) claimant

earned $58,884.58 in wages in the year prior to the date of injury; (4) $58,884.58 divided by 52 weeks results in the AWW; (5) wage records indicate that claimant earned $15,615.34 in salary from June 3, 2020, through December 31, 2020; (6) claimant further earned $43,269.24 in salary from the beginning of 2021 through the pay period ending June 4, 2021, with earnings totaling $58,884.58; (7) at hearing, claimant requested that the AWW also include distributions of income of $59,516.00 that he earned as the sole owner of the employer; (8) this amount is included on the Schedule E tax records; (9) these tax records indicate that employer was an S corporation; (10) in denying claimant's argument, the SHO relies upon the provisions of the BWC Administrator's Policy #CP-23-01, filed on March 28, 2022; (11) page eight of the policy notes that the BWC shall exclude certain types of earnings in the calculation of wages; (12) included in the income to be excluded is income reported on Schedule E, including, but not limited to, rental real estate, royalties, partnerships, S corporations, and trusts; and (13) the administrator's policy is on point in regards to distribution income received by claimant, and this type of income is therefore not to be used in calculating the AWW. Claimant appealed.

{¶ 28} 9. On April 18, 2022, the commission refused claimant's appeal.

{¶ 29} 10. Claimant filed a request for reconsideration, and in a May 19, 2022, order, the commission refused claimant's request for reconsideration.

{¶ 30} 11. On October 22, 2024, claimant filed the present complaint for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 31} For the reasons that follow, it is the magistrate's decision that this court should deny the writ of mandamus.

{¶ 32} In order for this court to issue a writ of mandamus, a relator must establish the following three requirements: (1) that relator has a clear legal right to the relief sought; (2) that respondent has a clear legal duty to provide such relief; and (3) that relator has no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 33} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 34} Pursuant to Ohio workers' compensation law, benefits payable to claimants are calculated based upon a figure known as the AWW. Calculation of the AWW is governed by R.C. 4123.61, which provides:

> The claimant's . . . average weekly wage for the year preceding the injury . . . is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, . . . any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
>
> In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers'

> compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.

{¶ 35} Under the "standard formula" in the first paragraph of R.C. 4123.61, the commission totals the wages for the 52 weeks before the injury and divides that total by 52, excluding unemployment beyond the control of the worker. However, the second paragraph provides that the standard formula is not used when its application would be unjust due to "special circumstances," and the commission may adopt a different method of calculation to do substantial justice to the claimant. The AWW should "approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury." *State ex rel. Mattscheck v. Indus. Comm.*, 2013-Ohio-285 (10th Dist.), ¶ 7, citing *State ex rel. Erkard v. Indus. Comm.*, 55 Ohio App.3d 186 (10th Dist. 1988). The AWW must do the claimant "substantial justice" without providing a windfall. *State ex rel. FedEx Ground Package Sys. v. Indus. Comm.*, 2010-Ohio-2451, ¶ 7, citing *State ex rel. Logan v. Indus. Comm.*, 72 Ohio St.3d 599, 600 (1995). The "special circumstances" provision in R.C. 4123.61 has "generally been confined to uncommon situations." *State ex rel. Wireman v. Indus. Comm.*, 49 Ohio St.3d 286, 288 (1990). Thus, R.C. 4123.61 provides a standard AWW computation that is to be used in all but the most exceptional cases. *State ex rel. Gollihue v. Bur. of Workers' Comp.*, 2006-Ohio-3910 (10th Dist.), ¶ 45, citing *State ex rel. Cawthorn v. Indus. Comm.*, 78 Ohio St.3d 112, 114 (1997).

{¶ 36} BWC Administrator Policy #CP-23-01(IV)(C) provides, in pertinent part, the following:

> C.    Earnings Included and Excluded in Wage Calculation

1.    The types of earnings included in BWC's calculation of wages include, but are not limited to:

. . .

e.    Bonuses related to direct and active participation in employment during the earnings period (e.g., performance bonus);

f.    Profit sharing related to work activity (e.g., earned based on hours worked, product produced, or other earnings related to work activity);

. . .

2.    The types of earnings excluded in BWC's calculation of wages include, but are not limited to:

a.    Bonuses unrelated to work activity (e.g., shareholder bonus, contract ratification, company-wide holiday bonus);

b.    Profit sharing unrelated to work activity (e.g., owns stock, dividends);

. . .

m.    Other forms of income reported on an IW's tax return that are not subject to Social Security withholding, Medicare, or self-employment tax, including, but not limited to:

. . .

ix.    Income reported on Schedule E (including, but not limited to, rental real estate, royalties, partnerships, S corporations, trusts).

{¶ 37} In the present case, claimant argues that he is both the injured worker and the employer and performs labor and services for the employer for which he pays himself in return for such labor and services. He asserts that it is a combination of both of these payments that constitutes his wages. He claims that, as the sole employee of respondent, he pays himself a base salary as an employee – his W-2 wages – and when the employer

generates a profit, he pays himself distributions based on profit. The distributions are reported to the Internal Revenue Service on a Schedule K-1, and these are his Schedule K-1 income. He contends that the amount of labor and hours he works impacts the profit of the business, so it should be treated the same as his salaried wage, which also relies upon the amount of labor and hours he works. Claimant also argues the SHO did not need to rely upon BWC Administrator Policy #CP-23-01 because BWC policy is not binding on the commission. Furthermore, claimant asserts that BWC Administrator Policy #CP-23-01 indicates that included in income for an AWW calculation is a bonus related to direct and active participation in employment and profit sharing related to work activity, and, here, his Schedule K-1 income is directly tied to his actual work efforts and is not passive income. Claimant points out that Schedule K-1 income is considered wages for purposes of child and spousal support calculations and should be considered wages in the present circumstances.

{¶ 38} The magistrate finds that claimant has failed to show that he has a clear legal right to the relief sought or that the commission has a clear legal duty to provide such relief. Claimant cannot show that he has a clear legal right to have his Schedule K-1 income included in the calculation of his AWW. The commission applied BWC Administrator Policy #CP-23-01(IV)(C) to the present facts. Claimant cites other areas of law that consider this type of Schedule K-1 income in calculating wages, specifically child and spousal support. However, while it is true that the commission is not bound by the BWC's policies or guidelines, *State ex rel. Honda of Am. Mfg., Inc. v. Indus. Comm.*, 2013-Ohio-286, ¶ 4 (10th Dist.), citing *State ex rel. Sugardale Foods, Inc. v. Indus. Comm.*, 2000-Ohio-185, applying the principles used in the unrelated areas of law relied upon by

claimant to a workers' compensation case is questionable when the BWC has a policy that directly addresses the issue. The commission is the adjudicatory arm of Ohio's Workers' Compensation system. *Honda of Am. Mfg.* at ¶ 7.  The BWC's internal guidelines for computation of wage loss serve as an advisory function, although they do not have the force of law and do not serve as binding or precedential authority. *State ex rel. Richards v. Indus. Comm.*, 110 Ohio App.3d 109, 111-112 (10th Dist. 1996). Thus, despite claimant's urging, the magistrate is disinclined to borrow the definition of wages used in areas of law unrelated to workers' compensation and finds that BWC Administrator Policy #CP-23-01(IV)(C) provides the more persuasive guideline to calculating AWW under the present circumstances. That policy indicates that income reported on Schedule E (including S corporations) is excluded from the wage calculation. Here, the employer, an S corporation, issues a Schedule K-1 form to report claimant's share, as part-owner, of income or losses of the S corporation. Claimant then uses his Schedule K-1 to report his income or losses on Schedule E. These circumstances fall directly within the language set forth in BWC Administrator Policy #CP-23-01(IV)(C), which excludes income from S corporations reported on Schedule E in the calculation of wages.

{¶ 39} Because claimant admittedly can point to no legal authority for the proposition that his Schedule K-1 income should be included in the calculation of AWW, the magistrate cannot find claimant is clearly entitled to relief or that the commission has a clear legal duty to include this income as wages in the calculation of AWW. However, this conclusion does not mean that claimant's arguments are completely without reason. In *Lipsky v. Barry*, 1990 Ohio App.LEXIS 5538 (10th Dist. Dec. 11, 1990), this court touched on the same issues asserted by claimant here. Although this court in *Lipsky* did

not reach a determination on the issue here, the case suggests claimant's line of reasoning may have some merit. In *Lipsky*, the employee suffered a heart attack as the result of an incident while working as an employee at a café. The employee and another individual owned the café through a partnership. At the time, the employee also worked part-time at a bar. The employee and the same individual were the owners and officers of a close corporation that operated the bar. The commission calculated the employee's AWW based upon his "wages" at the café (which were discovered to be periodic draws against anticipated profits of the partnership, although apparently erroneously reported as employment income on a W-2 form), but failed to include his earnings from his bar in the AWW calculation. In mandamus, the employee argued this his AWW should include the corporate earnings from the bar, as well as his income from working at the café. This court granted the writ, finding that R.C. 4123.61 requires the commission to do substantial justice when calculating the AWW, and the employee's part-time employment at both businesses was a special or unusual circumstance that the commission should have considered. This court ordered that the first issue for the commission to consider upon remand was whether the corporate earnings from the bar should have been included in the employee's AWW, in addition to the wages from the café, even though the employee's injury did not occur while working at the bar.

{¶ 40} The second issue to be addressed upon remand in *Lipsky*, which is relevant here, was whether income representing the net profit of a close corporation may be considered wages for purposes of calculating AWW. In *Lipsky*, the employee reported no salary from the bar but reported ordinary income, representing his share of the corporation's net profits. The evidence in the case included an interoffice communication

addressed to the claims examiner indicating that the income the employee received from the bar represented a return on investment rather than wages upon which workers' compensation benefit can be paid. The commission likewise argued that because the employee's income from the bar was in the nature of a return on investment rather than wages for which compensation can be paid, that income could not be considered for purposes of his AWW. This court explained that TTD benefits are designed to compensate for loss of earnings, and although not further defined in R.C. 4123, the term "wages" generally means compensation paid in return for labor or work, and a return on investment is not a wage, as it represents earnings derived from capital rather than labor. However, this court acknowledged that profits derived from a small business do not necessarily represent a return on investment. This court reasoned that income the employee received from the close corporation was not different from the draws he took on partnership profits, but the commission treated them differently. This court opined that the income received from the partnership and the corporation could represent earnings from labor, a return on investment, or a mixture of the two. This court found that the issue is a factual question within the discretion of the commission, but there was no indication that it was addressed. The order included the partnership earnings, but excluded the corporate earnings without explanation. This court concluded that because there was no indication in the record that the commission considered the income the employee received from the bar, a writ of mandamus would issue ordering the commission to further consider whether the income from the close corporation should be included in the employee's AWW under the special circumstances of the case, and whether this income constituted wages for which compensation can be paid.

{¶ 41} It is unknown what the commission ultimately determined upon further consideration in *Lipsky*. Notwithstanding, despite the similarities between the issues presented in *Lipsky* and the present case, the present case is procedurally distinguishable. In *Lipsky*, the commission did not address the earnings from the S corporation, while here the commission directly addressed whether the corporate distribution income received by claimant from the S corporation employer should be considered wages for purposes of calculating AWW. The commission determined that such income should not be considered wages for purposes of calculating AWW, and given our standard of review in commission cases, the magistrate cannot find that the commission's determination was not based on some evidence or was an abuse of discretion. Therefore, for the above reasons, claimant has not demonstrated the commission had a clear legal duty to include his Schedule K-1 income as wages for calculating his AWW.

{¶ 42} Accordingly, it is the magistrate's recommendation that this court should deny claimant's request for writ of mandamus.


/S/ MAGISTRATE
THOMAS W. SCHOLL III


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects

to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.